**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Terry,* **Slip Opinion No. 2016-Ohio-563.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-563

DISCIPLINARY COUNSEL *v.* TERRY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Terry,* Slip Opinion No. 2016-Ohio-563.]**

*Judges—Misconduct—Felony convictions—Violations of Code of Judicial Conduct, including rules prohibiting requiring a judge to uphold the integrity of the judiciary and noncompliance with the law—Permanent disbarment.*

(No. 2014-2157—Submitted May 19, 2015—Decided February 25, 2016.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2012-009.

_____

**Per Curiam**.

{¶ 1} Respondent, Steven James Terry, formerly of Cleveland, Ohio, Attorney Registration No. 0041460, was admitted to the practice of law in Ohio in 1989. He was appointed by the governor to fill a vacancy on the Cuyahoga

County Court of Common Pleas in April 2007. On June 13, 2011, Terry was convicted in federal court of one count of conspiracy to commit mail fraud and two counts of honest-services mail fraud in connection with his judicial duties. As a result of those felony convictions, we suspended his license to practice law on an interim basis on October 26, 2011. *In re Terry*, 130 Ohio St.3d 1403, 2011-Ohio-5473, 955 N.E.2d 1015. We imposed a separate suspension on November 1, 2013, for his failure to register as an attorney for the 2013-2015 biennium. *In re Attorney Registration Suspension of Terry*, 136 Ohio St.3d 1544, 2013-Ohio-4827, 996 N.E.2d 973.

{¶ 2} In a February 13, 2012 complaint, relator, disciplinary counsel, alleged that the conduct underlying Terry's felony convictions—namely providing judicial favors in exchange for contributions to his 2008 election campaign—violated five canons of the former Code of Judicial Conduct[1] and two Professional Conduct Rules. The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors, along with nine stipulated exhibits. A panel of the Board of Commissioners on Grievances and Discipline[2] heard testimony from two witnesses and received Terry's testimony by deposition from the McDowell Federal Correctional Institution.

{¶ 3} Having found that Terry abused his judicial position and committed all the charged misconduct, the panel recommended that he be indefinitely suspended from the practice of law. Noting that the sentencing judge found that Terry had committed perjury at his criminal trial and that his conduct had been an egregious violation of the public's trust and confidence in the judiciary, the board recommended that we exercise the full measure of our disciplinary authority to permanently disbar him from the practice of law in Ohio. Terry objects to the

---

[1] Because the conduct at issue occurred before March 1, 2009, relator charged Terry under the former Code of Judicial Conduct, 78 Ohio St.3d CLXIV.

[2] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

board's recommended sanction and urges us to indefinitely suspend him for his misconduct.

**{¶ 4}** We adopt the board's findings of fact and misconduct, overrule Terry's objection, and permanently disbar him from the practice of law in Ohio.

### Misconduct

**{¶ 5}** At the time of his appointment to the common pleas bench, Terry inherited numerous pending court cases, including a multiparty foreclosure action in the consolidated cases of *K & L Excavation, Ltd. v. Auburn Bldg. Co.*, Cuyahoga C.C.P. case No. CV-03-51572, and *Avon Poured Wall, Inc. v. Lane*, Cuyahoga C.C.P. case No. CV-04-519620, that involved a house that was being constructed by Brian and Erin Lane. As part of the litigation, American Home Bank sought $190,000 in damages from the Lanes. The Lanes moved for summary judgment in November 2006, and the bank moved for summary judgment in March 2008. Both motions were pending when Terry was appointed to the bench.

**{¶ 6}** Joseph O'Malley, a friend of Cuyahoga County Auditor Frank P. Russo, represented the Lanes in the litigation. In May 2008, Russo—who had provided substantial and continuous support to Terry's election campaign—gave Terry a note directing him to deny the bank's motion for summary judgment. In July 2008, a member of Russo's staff called Terry to give him the case numbers in the bank litigation and ask him to call Russo. Terry called Russo on July 17, 2008, and had the following discussion about the pending litigation:

> [Terry]: Hey Renee called and said you wanted me to call you?
>
> [Russo]: Yeah, I just wanted to let you know. Did Robin give you those case numbers?
>
> [Terry]: Yes.

[Russo]:      OK.  In other words, I talked to you about this once
              before, it's about denying the motions for summary
              judgment.

[Terry]:      Yep.  I still have the note that you gave me.

[Russo]:      OK.    Good.    Deny  the  motions  for  summary
              judgment.  OK.  Good.

[Terry]:      Got it.

[Russo]:      OK, good.  No that was all, I just wanted to touch
              base with you on that, and that's it.

{¶ 7} Following that conversation, Terry called the magistrate assigned to the American Home Bank litigation and, based solely upon his review of the case docket available on the Internet, instructed her to deny the bank's motion for summary judgment.  Terry signed an entry denying the motion on July 18, 2008, and advised O'Malley of his action.  During a telephone conversation with Russo later that day, Terry told him, "This is so ironic that you're calling me right now, because I called you just to tell you that, um, I took care of those two issues with those two cases that we talked about. * * * Denied everything, and then, who's over in my courtroom right now but Joe O'Malley?"

{¶ 8} Terry did not disclose any of his communications with Russo and O'Malley to the other parties to the litigation.  In October 2008, the bank agreed to settle the case for a $27,000 judgment against the Lanes.  That November, Terry was elected to a full term as a Cuyahoga County Common Pleas Court judge.

{¶ 9} Terry was indicted on September 14, 2010, *United States v. Terry*, N.D. Ohio case No. 1:10-CR-390, and pursuant to Gov.Jud.R. III(6)(A) was immediately disqualified from acting as a judge.  A five-count superseding indictment was issued on March 9, 2011; it alleged that Russo had provided

financial and other types of support to Terry's 2008 judicial campaign in exchange for which Terry provided favorable judicial treatment for O'Malley in the American Home Bank litigation.

{¶ 10} On June 13, 2011, Terry was convicted of three of the five counts in the superseding indictment: Count One, conspiring to commit mail fraud and honest-services mail fraud in violation of 18 U.S.C. 1341, 1346, and 1349 by accepting financial and other types of support for his judicial campaign from Russo; and Counts Three and Four, defrauding and depriving Cuyahoga County citizens and taxpayers of his honest services by soliciting and accepting payments and other things of value from Russo through the U.S. Mail in exchange for favorable official action by Terry in violation of 18 U.S.C. 1341, 1346, and 2. He resigned his judicial position the next day.

{¶ 11} Terry was sentenced on October 4, 2011, to a term of 63 months in prison on each of his three convictions, to be served concurrently, and was ordered to serve two years of supervised release and to perform 250 hours of community service on his release from prison. He was also ordered to pay a $300 special assessment and to make restitution totaling $27,880.79.

{¶ 12} The parties stipulated and the board found that Terry's conduct described above violated Canon 1 of the former Code of Judicial Conduct (requiring a judge to uphold the integrity and independence of the judiciary), Canon 2 (requiring a judge to respect and comply with the law and at all times act in a manner that promotes public confidence in the integrity and impartiality of the judiciary), Canon 3(B)(7) (prohibiting a judge from initiating, receiving, permitting, or considering communications made to the judge outside the presence of the parties or their representatives concerning a pending or impending proceeding except in certain prescribed circumstances), Canon 3(E) (requiring a judge to disqualify himself or herself in a proceeding in which the judge's impartiality might be reasonably questioned), and Canon 4 (requiring a judge to

avoid impropriety and the appearance of impropriety in all of the judge's activities) as well as Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). The board also found that Terry's conduct violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

**Sanction**

**{¶ 13}** In determining what sanction to recommend to this court, the panel and board considered the ethical duties the lawyer violated, the presence of aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B),[3] and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.

**{¶ 14}** As mitigating factors, the parties stipulated and the panel and board found that Terry had no prior disciplinary history, had fully cooperated in the disciplinary process, had a good character and reputation in the community, and had had other penalties or sanctions imposed for his misconduct. *See* BCGD Proc.Reg. 10(B)(2)(a), (d), (e), and (f). The parties stipulated to one aggravating factor—that Terry acted with a dishonest or selfish motive—but the panel and board also found that his actions were premeditated and occurred over a period of time as opposed to being impromptu. *See* BCGD Proc.Reg. (B)(1)(b).

**{¶ 15}** The panel acknowledged that this court holds judges to the highest possible standards of ethical conduct and that Terry's misconduct involved the abuse of his judicial position. *See, e.g., Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286. Comparing this case to *Ohio State Bar Assn. v. McCafferty*, 140 Ohio St.3d 229, 2014-Ohio-3075, 17 N.E.3d 521, in which we indefinitely suspended former judge Bridget McCafferty for lying to the Federal Bureau of Investigation ("FBI") about her involvement with

---

[3] Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B)(1) and (2) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

Russo and Cuyahoga County Commissioner James Dimora, the panel found that many of the same mitigating factors were present. Crediting Terry for acknowledging the severity of his violations—in contrast to McCafferty's insistence that she had told the truth despite audio recordings that proved otherwise—the panel concluded that his conduct warranted the same punishment.

{¶ 16} Noting that the sentencing judge found that Terry perjured himself at his criminal trial, the board found that "there is no more egregious violation of the public's trust and confidence in the judiciary than [Terry's] conduct herein." Therefore, the board recommends that we permanently disbar Terry from the practice of law in Ohio. Terry objects to the board's recommendation. He argues that we should defer to the panel's credibility determinations and weighing of the evidence because the panel members heard the witness testimony firsthand and found that an indefinite suspension would adequately protect the public from further harm.

{¶ 17} While we agree with the panel's credibility determinations as well as its findings of fact and misconduct, we find that Terry's actions and resulting criminal convictions are more egregious than those at issue in *McCafferty*. McCafferty was charged with and convicted of multiple counts of making false statements to FBI agents who made an unannounced visit to her home. *McCafferty* at ¶ 2. While she made those statements in an effort to make herself appear less susceptible to Russo and Dimora's attempts to influence or intervene in cases before her court, *id.* at ¶ 14, she was not charged with the actual misuse of her judicial position to advance their interests, *id.* at ¶ 7. In contrast, Terry was convicted of felony offenses arising from actions taken in his official capacity as a judge—including defrauding and depriving Cuyahoga County citizens and taxpayers of his honest services by soliciting and accepting payments and other things of value from Russo through the U.S. Mail in exchange for favorable judicial action. Because his misconduct occurred in the performance of his core

judicial duties, we find that it is substantially more egregious than McCafferty's misconduct. Therefore, we overrule Terry's objection, adopt the board's report, and permanently disbar Terry.

{¶ 18} Accordingly, Steven James Terry is permanently disbarred from the practice of law in Ohio. Costs are taxed to Terry.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'DONNELL, J., concurs in judgment only.

LANZINGER, J., concurs with an opinion in which O'CONNOR, C.J., and FRENCH, J., join.

O'NEILL, J., dissents with opinion.

_____

**LANZINGER, J., concurring.**

{¶ 19} I concur in the judgment permanently disbarring Steven Terry, which is consistent with my position in support of disbarment in *Ohio State Bar Assn. v. McCafferty*, 140 Ohio St.3d 229, 2014-Ohio-3075, 17 N.E.3d 521, ¶ 32 (Lanzinger, J., dissenting). Like *McCafferty*, this case involves a judge whose felonious conduct has brought disrepute to and caused irreparable harm to the judicial system, and it calls for " 'the full measure of our disciplinary authority.' " *Id.*, quoting *Disciplinary Counsel v. Gallagher*, 82 Ohio St.3d 51, 53, 693 N.E.2d 1078 (1998). I accordingly concur in today's decision.

O'CONNOR, C.J., and FRENCH, J., concur in the foregoing opinion.

_____

**O'NEILL, J., dissenting.**

{¶ 20} I respectfully disagree with the conclusion reached by the majority regarding the sanction in this disciplinary case. In short, I fail to find any meaningful difference between what Judge Steven Terry did and what Judge

Bridget McCafferty did in *Ohio State Bar Assn. v. McCafferty*, 140 Ohio St.3d 229, 2014-Ohio-3075, 17 N.E.3d 521. Both were involved in the corruption scandal of Cuyahoga County officials Jimmy Dimora and Frank Russo. Judge McCafferty was given an indefinite suspension by this court. The majority in this case has decided to go one step further and disbar Judge Terry, which is the functional equivalent of the death penalty for a lawyer.

{¶ 21} In one case, McCafferty was found to have repeatedly lied to FBI agents while sitting at her kitchen table. Those lies involved her participation in a justice-for-sale scheme. She continued to lie to the agents in spite of being told by the agents that they had recorded her conversations. Judge Terry was caught perjuring himself in court about his involvement in the justice-for-sale scheme with the same parties. This is clearly an act of dishonesty that cannot be tolerated from lawyers, let alone judges. And for that action he has been imprisoned. So the question before us today is the tragic weighing of the danger to the public of both acts of dishonesty.

{¶ 22} Simply stated, the question is, "Are lies told to federal agents any less objectionable to lies told under oath to a court?" No. They both represent dishonesty that is used to avoid detection of wrongful acts. Both actors tried to cover up their involvement in the corruption. Both should suffer the same consequence, because they are equally culpable.

{¶ 23} To be clear, I am not condoning the actions of either of these two former judges. However, an indefinite suspension is more than sufficient to protect the public from future misbehavior from either person. For all practical purposes, it will be another five years before Terry could even consider applying for reinstatement. He would then have the formidable task of convincing the majority of this court at that time that he has changed his life and has something positive to offer the people of this state. The prospects of that happening are no doubt slim, but I have trust in my colleagues to make the right decision at that

time. I see no benefit to slamming shut that door at this time. He made a mistake and he is paying for it today. Disbarment is inappropriate.

{¶ 24} Accordingly, I must dissent.

_____

Scott J. Drexel, Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Koblentz & Penvose, L.L.C., Richard S. Koblentz, Nicholas E. Froning, and Bryan L. Penvose, for respondent.

_____